IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

**BRUCE E. FREDRICS and PROFESSIONAL
ADJUSTING & CONSULTING SERVICE, LLC**

              Plaintiffs,                   CIVIL ACTION FILE NO.

    -vs-                               2:20-cv-00226-RWS

MEREDITH CORPORATION,
LYLE BANKS, and JOHN DOES,

              Defendants.

## **COMPLAINT**

       Plaintiff Bruce E. Fredrics ("Bruce Fredrics" or "Fredrics") and Plaintiff

Professional Adjusting & Consulting Service, LLC ("PACS" or "PACS, LLC")

(collectively, "Plaintiffs") file this Complaint against Defendants Meredith

Corporation, licensee of CBS46 News WGCL -TV , Atlanta, Georgia[1] (Defendant

(Defendant "Meredith Corporation"),  Lyle  Banks, at all times relevant hereto, was

the former Vice President and General Manager of Defendant Meredith in charge

of the content of the local news of CBS46 News WGCL -TV, Atlanta , Georgia

---

[1]  WGCL-TV, channel 46 (UHF digital channel 19), is a CBS-affiliated television station licensed to Atlanta, Georgia and owned by the Meredith Local Media subsidiary of Des Moines, Iowa-based Meredith Corporation, as part of a duopoly with independent station WPCH-TV (channel 17).

and its print and media outlets and shows, especially the "Better Call Harry" show (Defendant "Banks") , and John Does (hereinafter, collectively, referred to as "Defendants") and Plaintiffs state as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Bruce Fredrics is a resident of Spalding County, Georgia.

2.    Plaintiff PACS, LLC is a Georgia Limited Liability Company domiciled in and with its registered agent in Gainesville, Hall County, Georgia.

3.    Defendant Meredith Corporation is an Iowa corporation doing business in Georgia, who has a principal office address and is domiciled at the so-called 1716 Locust Street , Des Moines, Iowa 50309. Defendant Meredith Corporation maintains a registered office located in Gwinnett County. Defendant Meredith Corporation can be served with process by serving their Registered Agent, CT Corporation System at 289 S Culver Street, Lawrenceville, Georgia 30046 .

4.    Defendant, Lyle Banks is a natural person who resides in Winnetka, Illinois. Lyle Banks is subject to the jurisdiction of this court and can be served with process at 1124 Merrill Street, Winnetka, Illinois 60093.

5.    Defendants John Doe individual(s) are those yet unidentified party-Defendants, who are liable to Plaintiff under the allegations set forth in this

Complaint and are each subject to the jurisdiction and venue of this Court.

6.    Defendants John Doe business entity(ies) are those yet unidentified party-Defendants, who are liable to Plaintiff under the allegations set forth in this Complaint and are each subject to the jurisdiction and venue of this Court.

## NATURE OF THE ACTION

7.    This defamation suit arises from intentionally fabricated and false statements that were aired and published by Defendants Meredith Corporation and Banks (aided and abetted by their counsel, their employees, Margo Ellis ("Ms. Ellis")) alleging that Ms. Ellis was defrauded and scammed by Plaintiffs Bruce Fredrics and PACS, LLC. Defendants uttered and published malicious and knowingly false defamations and/or defamations *per se* (hereinafter, collectively, "defamation") against Plaintiffs.

8.    Defendants Meredith Corporation and Banks published, promoted , and amplified multiple false statements and defamation *per se* during segments with Better Call Harry CBS46 and on their CBS46 website with the following URL : *https ://www.cbs46.com/*. Defendants Meredith Corporation and Banks broadcasted multiple false statements and  defamation against Plaintiffs ("news segments") to a wide audience in at least two separate videos on or about May 28, 2019 and then subsequently broadcasted

additional false news segments thereafter, even to this day. Also, Defendants Meredith Corporation and Banks published multiple statements and defamation against Plaintiffs in an article on or about May 29, 2019 and then subsequently published additional false statements in another article dated November 25 , 2019 to their website CBS46 with the following URL: https ://www.cbs46 .com/.

9.    It's *Prima Face* evidence that someone I would be harmed by false, negative portrayals in the news by a "trusted" reporter. Thus, it is surely *prima face* evidence Plaintiffs were harmed by maliciously, false, negative portrayals in the Harry Samler, Defendants' employee, and the "trusted" investigative reporter on Defendants' show *Better Call Harry*.

10.    Plaintiffs bring this action to restore their reputation and clear their name, ensure the truth prevails, stop the weaponization of false allegations of fraud against them (i.e., Defendants *fake news*), and vindicate their rights.

11.    The value and extent of damages arising out of this claim is not less than $75,000 .00 thus venue and jurisdiction are proper in this court. This court has diversity jurisdiction as set forth, in part, by 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

12.    In property loss and insurance claims, Plaintiff Bruce Fredrics through

Plaintiff, PACS, LLC offers services as a consultant, appraiser, expert witness, independent adjuster, private adjuster or public adjuster.

13. Plaintiffs' insurance field work and consultations consists of, i.e., evaluating clients' cases and claims on an individual basis and making professional determinations based on a client's needs and their specific damages/injuries.

14. Prior to hiring Plaintiffs, Margo Ellis received an adjustment for her property damage claims from Nationwide, her insurer, for which she disagreed.

15. Ms. Ellis contacted Plaintiffs through a third-party, to evaluate her claims.

16. Plaintiffs then offered to assist Ms. Ellis by performing an appraisal.

17. Ms. Ellis executed a contract which outlined the terms, fees, and scope of Plaintiffs ' engagement (herein referred to as the "Contract," the "Engagement," or the "Agreement").

18. Plaintiffs spoke with Ms. Ellis prior to the execution of the said Contract and fully answered Ms. Ellis's questions and concerns regarding their services.

19. Plaintiffs performed the contracted-for appraisal work for Ms. Ellis .

20. During this time, Plaintiff Bruce Fredrics utilized his professional expertise and two-panel appraisal skills to obtain an Appraisal award of $40,000.00 _new money_[2] for Ms. Ellis.

---

[2] Additional claim money from Ms. Ellis' insurer, over and above what her insurer offered to pay to her for her claims prior to her appointing/hiring Plaintiffs

21.  Ms. Ellis' insurance company, Universal Property & Casualty Insurance, (the "Insurer") wrote the check in both Plaintiffs' and Margo Ellis' names.

22.  Ms. Ellis, when Plaintiffs informed her that they received the $40,000.00 check, demanded physical possession of the check.

23.  Ms. Ellis further demanded physical possession of the check and that it be endorsed by PACS, LLC and once check was honored, she would pay Plaintiffs what she thought was "fair," but not the 30% fee cap ($12,000.00) for which they both had agreed and for which they had contracted as Plaintiffs' legitimate fee.

24.  Plaintiff Fredrics explained, again, to Ms. Ellis that, as her Appraiser, the fees for the work performed were 30% of the new money as per their written Contract (i.e., at $300.00 per hour plus expenses, with a fee cap of up to 30% or $12,000.00, and Ms. Ellis retorted, "I [Ms. Ellis] am expressly aware of the terms of your contract."

25.  Ms. Ellis suddenly became hostile and, for the first time in their relationship, accused Plaintiffs of committing fraud and charging too much for the work they performed. She repeatedly interrogated Mr. Fredrics about his fees and the terms and scope of engagement.

---

as her Appraisers.

26.    Plaintiffs reminded Ms. Ellis of their previous conversations and again
       explained the fees, terms and scope of Plaintiffs' engagement, however, out
       of the clear blue sky, told Plaintiff Fredrics that he was trying to take
       advantage of her because she was black and yelled at him saying that he was
       a racist and hung up.

27.    Not being able to force Plaintiffs through her own threats and intimidation,
       Ms. Ellis contacted Harry Samler ("Samler"), who is an "investigative
       reporter" and the host of the CBS46 television segment, "*Better  Ca l l*
       *Harry*" (Defendants' TV program) in the hope to have Samler force
       Plaintiffs to reduce their fee by $10,000.00, her Policy deductible.

28.    Plaintiffs hired an attorney to make contact with Ms. Ellis and with Samler
       (her finally-admitted advocate) in an effort to resolve the fee dispute.

29.    Ms. Ellis refused to communicate with Plaintiffs or Plaintiffs' Attorney
       directly and used Samler has her negotiator/advocate (as he had the power of
       the press behind him) and Defendants and Samler agreed with this symbiotic
       arrangement.

30.    Defendant Harry Samler communicated with Plaintiffs and acted as an
       informal mediator, disguising his true nature as Ms. Ellis' advocate (and,
       notwithstanding the fact that Samler is not a licensed attorney, he gave

Plaintiffs legal advice) while he was pressuring Plaintiffs to lower their legitimate fees (having bought Ms. Ellis's lies hook line and sinker).

31. Plaintiff Bruce Fredrics explained to Samler, *ad nauseam*, that the fees were the result of performing work as an appraiser not as a public adjuster.

32. Plaintiff Fredrics explained the nature of the dispute between himself, PACS, LLC, and Margo Ellis but, unfortunately, Samler had a different, covert, agenda, Plaintiff Fredrics' account was dismissed as false by Samler without any independent investigation or objective basis in fact.

33. Under the agreement between Plaintiffs and Margo Ellis, monetary distribution was proper.

34. Samler advised Plaintiff Fredrics that he would not disparage Plaintiffs on the television show other than to alert the public that Plaintiff Fredrics was under investigation by the State.

35. Samler stated that he would air a segment dedicated to the fee dispute between Ms. Ellis and Plaintiffs if Plaintiffs could fully explain their side; which Plaintiff Fredrics, in good faith, did.

36. Samler totally, without any factual or legal reasons, disregarded Plaintiff Fredrics' account of the dispute with Ms. Ellis and proceeded to harass Fredrics for not cutting his fees $10,000.00 and settling with her. In fact,

Samler refused to believe that there was any sort of misunderstanding

between Plaintiffs and Ms. Ellis and dismissed Plaintiff Fredrics' explanation

without making any effort to investigate the truth of Fredrics' claims.

37.    Becoming impatient and dissatisfied with the outcome of the mediation

efforts of Defendants and Samler, Ms. Ellis (upon information and belief,

with the suggestion and assistance of Harry Samler and Defendants)

submitted complaints containing maliciously false allegations to the Georgia

Department of Insurance and the Georgia Secretary of State.

38.    Defendants, through Samler, threatened to air false allegations of fraud and

illegal business practices unless Plaintiffs settled with Margo Ellis at a

greatly reduced payment for his fees.

39.    Plaintiffs, fearful of the segments potential to spread misinformation about

Plaintiffs ' honorable and legitimate business, and refusing to be further

blackmailed by Samler and Ms Ellis, filed suit to thwart Defendants'

intentions to air the segment on CBS46 News which would defame them and

accuse them, in part, of predatory business practices, fraudulent and illegal

actions and omissions ("fraud"), and/or other criminal activities to defraud

their clients.

40.    Due, in part, to the fact that Plaintiffs refused to pay Ms. Ellis monies she

was not entitled to under the terms of the agreement (i.e., give her the extra $10,000.00), Defendants Banks and Meredith Corporation (aided and abetted by Samler, their employee) published and republished defamation and/or defamatory *per se* content against Plaintiffs; begining on May 28, 2019 and continuing to the date of this filing.

41.   Defendants apparently feared Plaintiffs' refusal to communicate with Samler on air (not live, taped – which could be edited) about the matter involving Ms. Ellis would hinder viewership of their *Better Call Harry* segment.

42.   In an effort to prevent any bombardment of potentially defamatory media from being aired by Defendants, Plaintiff Fredrics requested that the Judge enforce a temporary injunction to prevent "fake news" media attention on him and his businesses.

43.   The injunction was orally denied[3] and Plaintiffs were negatively portrayed by false statements and defamation *per se* made by Samler, Defendants Banks and Meredith Corporation, their attorney S. Derek Bauer (who made several maliciously false statements outside the courthouse shortly after said May 28, 2019 hearing), and John Does, and aired multiple times thereafter.

---

[3] A very short statement was put into the record of that hearing by the trial court right after the May 28, 2019 hearing but, said ruling was not memorialized, expanded, or filed with the trial court until August 2, 2020.

44.    Defendants flexing their *power of the press*, forged ahead and published false statements in the form of video segments, audio and video clips, and written articles as retaliation against Plaintiffs for their legitimate claims, evidence, and statements in court and to Samler (prior to Plaintiffs filing subject Fulton County lawsuit) and acted with reckless disregard for the truth.

45.    Plaintiffs Fredrics and PACS were negatively portrayed by false statements made by Margo Ellis and Defendants Banks, Meredith Corporation, and John Does; and, despite the fact that each knew those statements were false and were fabricated by Ms. Ellis solely to extort money from Plaintiffs they pressured to capitulate otherwise Plaintiffs would feel the full weight and power of the press.

## **Defamatory Content A**

## **"Alleged Extortion Lands Better Call Harry In Court "**

46.    On or about May 28, 2019, Defendants Banks and Meredith Corporation, and John Does aired a segment titled, "Alleged Extortion Lands Better Call Harry In Court" ("Defamatory Content A") on the same day that testimony and evidence was given at Fulton County Superior Court.

47.    Defendants blatantly disregarded the evidence and the testimony of Plaintiff Bruce Fredrics that was presented at the May 28, 2019 hearing where

Plaintiffs evidence and Plaintiff Fredric's sworn testimony revealed no wrongdoing by Plaintiffs, whatsoever.

48. On or about May 28, 2019, Defendants through CBS46 aired Defamatory Content A on Better Call Harry which was dedicated to falsely portraying Plaintiffs as engaging in fraudulent and illegal business practices at the expense of their clients and portraying Plaintiffs as being engaged in criminal conduct.

49. Defamatory Content A is false.

50. Defamatory Content A claims , among other things , that Plaintiff Fredrics defrauded Margo Ellis, wrongfully withheld her check, scammed her, used fraudulent and/or illegal business practices against her, and then filed suit to "silence" Ms. Ellis.

51. On or about May 29, 2019, Defendants published Defamatory Content A to their CBS46 News website again alleging that Plaintiffs engaged in fraudulent and predatory business practices at the expense of their clients.

52. Defendants published Defamatory Content A on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

53. Defendants published and republished false statements contained in

Defamatory Content A on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

54. Defendants repeatedly publish and republish Defamatory Content A each day, without correction, to this day. As a result of Defendant Banks' and Defendant Meredith Corporation's egregious actions, the defamatory content has been repeatedly and foreseeably republished by media outlets and third parties throughout the country.

## **Defamatory Content B**

## **" Better Call Harry Sued for Extortion"**

55. On May 28 , 2019, shortly after the testimony and evidence was given at Fulton County Superior Court for the subject hearing that day, Defendants Banks, Meredith Corporation and John Does aired a segment titled, "Better Call Harry Sued for Extortion" ("Defamatory Content B").

56. Defendants blatantly disregarded the evidence and the testimony of Plaintiff Bruce Fredrics that was presented at the May 28, 2019 hearing.

57. Content B is false.

58. Defamatory Content B claims, among other things , that Plaintiff Fredrics defrauded Margo Ellis , wrongfully withheld her check, scammed her, used fraudulent and illegal business practices against her, and then filed suit to

"silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to

destroy Plaintiffs and their businesses for not giving in to their extortion.

59.    On  or  about  May  29,  2019, Defendants  published Defamatory Content B

to their CBS46 News website, alleging, in part, that Plaintiffs engaged in

fraudulent and/or illegal business practices at the expense of – and which

injured – their clients.

60.    Defendants published Defamatory Content B on  their social media

platforms, including Twitter, Facebook, and YouTube alleging, in part, that

Plaintiffs defrauded their clients.


61.    Defendants published and republished the maliciously false statements

contained in Defamatory Content B on their social media platforms,

including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded

their clients.

62.    Defendants repeatedly publish and republish Defamatory Content B each

day, without correction , to this day. As a result of Defendant Banks' and

Defendant Meredith Corporation's actions, the defamatory and defamatory

*per se* content has been repeatedly and foreseeably republished by media

outlets and third parties throughout the country.

## Defamatory Content C

## "Better Call Harry Sued for Extortion "

63.     On or about May 29, 2019, Defendants published an article on their website

        titled , "Better Call Harry Sued for Extortion" ("Defamatory Content C")

        alleging that Plaintiffs defrauded their clients.

64.     Defendants blatantly disregarded the evidence and the testimony of Plaintiff

        Bruce Fredrics that was presented at the May 28, 2019 hearing.

65.     Defamatory Content C is false.

66.     On or about May 29, 2019, Defendants through CBS46 published

        Defamatory Content C on their website which falsely portrayed Plaintiffs as

        engaging in fraudulent and/or illegal business practices at the expense of

        their clients.

67.     Defamatory Content C claims, among other things, that Plaintiff Fredrics

        defrauded Margo Ellis, wrong fully withheld her check, scammed her, used

        fraudulent and/or illegal business practices against her, and then filed suit to

        "silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to

        destroy Plaintiffs and their businesses for not giving in to their extortion.

68.    Defendants published Defamatory Content C on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

69.    Defendants published and republished false statements contained in Defamatory Content C on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

70.    Defendants repeatedly publish and republish Defamatory Content C each day, without correction , to this day. As a result of Defendant Banks' and Defendant Meredith Corporation's actions, the defamatory content has been repeatedly and foreseeably republished by media outlets and third parties throughout the country.

## **Defamatory Content D**

## **"Public Adjuster Sues Better Call Harry,**

## **Sec. of State, and Insurance Commissioner"**

71.    On or about November 25, 2019 , Defendants Banks, Meredith Corporation, and John Does aired a segment titled , "Public Adjuster Sues Better Call Harry, Sec. of State , and Insurance Commissioner" ("Defamatory Content

D") alleging that Plaintiff s defrauded their clients.

72. Defendants blatantly disregarded the evidence and the testimony of Plaintiff Bruce Fredrics that was presented at the May 28, 2019 hearing.

73. Defamatory Content D is false.

74. On or about November 25, 2019, Defendants through CBS46 aired Defamatory Content D on Better Call Harry which was dedicated to falsely portraying Plaintiffs as engaging in fraudulent and/or illegal practices at the expense of their clients.

75. Defamatory Content D claims, among other things, that Plaintiff Fredrics defrauded Margo Ellis, wrongfully withheld her check, scammed her, used fraudulent and/or illegal business practices against her, and then filed suit to "silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to destroy Plaintiffs and their businesses for not giving in to their extortion.

76. On or about November 25, 2019, Defendants published Defamatory Content D to their CBS46 News website alleging that Plaintiffs engaged in fraudulent and/or illegal practices at the expense of their clients.

77.     Defendants published and republished Defamatory Content D on their social

media platforms, including Twitter, Facebook, and YouTube alleging that

Plaintiffs defrauded their clients.

78.     Defendants repeatedly publish and republish Defamatory Content D each

day, without correction, to this day. As a result of Defendant Banks' and

Defendant Meredith Corporation's actions, the defamatory and/or

defamatory *per se* content has been repeatedly and foreseeably republished

by media outlets and third parties throughout the country.

## **Defamatory Content E**

**"Woman Sues Insurance Expert After He Sues Better Call Harry,**

**Insurance Commissioner and Georgia Secretary of State "**

79.     On or about November 25, 2019, Defendants published an article on their

website titled, "Woman Sues Insurance Expert After He Sues Better Call

Harry, Insurance Commissioner and Georgia Secretary of State"

("Defamatory Content E") alleging that Plaintiffs defrauded their clients.

80.     Defendants blatantly disregarded the evidence and the testimony of Plaintiff

Bruce Fredrics that was presented at the May 28, 2019 hearing.

81.   Defamatory Content E is false.

82.   On or about November 25, 2019, Defendants through CBS46 published Defamatory Content E on their website which falsely portrayed Plaintiffs as engaging in fraudulent and/or illegal practices at the expense of their clients.

83.   Defendants published Defamatory Content E on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

84.   Defendants published and republished false statements contained in Defamatory Content E on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

85 .  Defendants repeatedly publish and republish Defamatory Content E each day, without correction, to this day. As a result of Defendant Samler's, Defendant Banks ', Defendant Bauer's, and Defendant Meredith Corporation's actions, the defamatory content has been repeatedly and foreseeably republished by media outlets and third parties throughout the country.

*Page 19 of  38*

## **Defamatory Contents A, B, C, D, and E**

86.    Collectively, Defamatory Contents A , B, C, D and E will be referred to
herein as the "Defamatory Content."

87.    Defendants Banks, Meredith Corporation and John Does, in conspiracy with
and/or aided and abetted by their employees and agents – especially Samler
and Bauer – discredited Plaintiffs in the Defamatory Content because, i.e.,
Plaintiffs stated in open court (and in their pleadings) that Defendant Samler
threatened to run maliciously false information about Plaintiffs unless
Plaintiffs paid Margo Ellis a substantially reduced fee (reduced by
$10,000.00 her Policy deductible) and that Bauer made "unprotected,"
maliciously false statements outside the courthouse shortly after the subject
May 28, 2019 hearing.

88.    Defendants Banks, Meredith Corporation and John Does published the
Defamatory Content despite knowing that the Secretary of State, fraud
division, was dropping their investigation due to a lack of merit (i.e., Margo
Ellis' claims against Plaintiffs were bogus and/or maliciously false).

89.    Defendants Banks, Meredith Corporation, Bauer, and John Does disregarded
the account of facts given in Court, and in Plaintiffs' pleadings, and

proceeded with publication of the Defamatory Content without making any independent confirmations of truth.

90.   The Defamatory Content has forced Plaintiff to – and will continue to force them – to expended funds on corrective advertisements and publications on the fact that PACS is a legitimate business and did not defraud Margo Ellis. Plaintiffs were forced and will continue to be forced to pay for attorney fees and litigation costs to to restore their reputation and clear their name, ensure the truth prevails, stop the weaponization of maliciously false allegations of fraud and illegal activities against them, and vindicate their rights.

91.   Plaintiffs were damaged in an amount to be proven at trial.

## **COUNT ONE - LIBEL**

92.   Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 91 of their Complaint as if fully restated herein.

93.   Defendants published Defamatory Content.

94.   The Defamatory Content contains false statements of fact.

95.   Defendants aired defamatory content[4] from the show, *Better Call Harry*, on

---

[4] This *content* was clearly devised and edited to splice, mix and match, partial truths to appear in *faux* sequences, in order to portray Plaintiffs in a bad light and to convince the public into believing that Plaintiffs were *crooks*.

or about May 28, 2019, and then aired subsequent attacks on Plaintiff

through follow up videos, video and audio clips, and written stories.

96.    The Defamatory Content was published and republished onto Defendants'

CBS46 News social media accounts including Facebook and YouTube where

they continue to be shared and viewed as of the date of this filing.

Defendants continue to authorize and consent to the republication of the

content, without correction, to this day.

97.    As a result of Defendants actions, the Defamatory Content has been

repeatedly and foreseeably republished by media outlets and other third

parties throughout the country.

98.    As a result of the Defendants' actions, Plaintiffs ' personal and professional

reputations were injured, and Plaintiff Fredrics was exposed to public hatred,

contempt, and ridicule.

99.    The false statements in the Defamatory Content are of and concerning

Plaintiffs in that they allege Plaintiffs committed fraud and/or illegal acts

(*faux* crimes) despite knowing that the Secretary of State's fraud division

conducted a thorough and sifting investigation that totally exonerated

Plaintiffs and, upon information and belief, determined that Margo Ellis'

claims against Plaintiffs were bogus and/or maliciously false and that the

Secretary of State did not, and never did, have regulatory authority over

Plaintiffs as homeowners insurance claims Appraisers.

100.   Plaintiff Fredrics is concededly a private figure and the false statements were

made with actual malice, as alleged herein.

101.   The false statements defamed Plaintiffs in their trade and profession.

102.   The false statements caused actual damage to Plaintiffs, the full amount of

which will be proven at trial.

103.   Defendants' actions show willful misconduct, malice, fraud, wantonness,

oppression and that entire want of care which raises a presumption of

conscious indifference to the consequences, and accordingly Plaintiffs are

entitled to an award of punitive damages against Defendants.

## COUNT TWO -SLANDER

104.   Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1

through 103 of their Complaint as if fully restated herein.

105.  Defendants falsely misrepresented Plaintiffs by alleging that Plaintiffs committed theft and fraud and other illegal acts.

106.  Defendants published the Defamatory Content as statements of fact.

107.   Defendants in no way shape or form indicated that the Defamatory Content were to be interpreted as statements of opinion rather than fact.

108.  As a result of the Defendants ' actions, Plaintiffs' personal and professionalreputation were injured, and Plaintiff Fredrics was exposed to public hatred, contempt, and ridicule.

109.  Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

110.  The false statements defamed Plaintiff Fredrics in his trade and profession.

111.  The false statements caused actual and severe damage to Plaintiffs, the full amount of which will be proven at trial.

112.  Defendants' actions show willful misconduct, malice, fraud, wantonness,

oppression and that entire want of care which raises a presumption of conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT THREE - NEGLIGENT MISREPRESENTATION

113.   Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 112 of their Complaint as if fully restated herein.

114.   Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

115.   Plaintiffs show that Defendants made statements that Defendants knew to be false, misleading, and incorrect to Plaintiffs.

116.   Plaintiffs show that Defendants published statements that Defendants knew to be false, misleading and incorrect to and about Plaintiffs.

117.   The representations made by Defendants, however, were in fact negligent and false.

118.   Among other false statements, Defendants informed Plaintiff that they would not disparage Plaintiffs on the Better Call Harry television show and only that they would alert the public that Plaintiff Fredrics was under investigation by the State, nothing more (i.e., no details of the basis for said

investigation(s) and/or of Ms. Ellis' allegations).

119.  At the time these representations were made by Defendants, Plaintiffs were
deceived by Defendants and Samler and were ignorant of the falsity of their
misrepresentations (i.e., Plaintiffs would not be defamed on air if they
cooperated with Samler, made statements/supplied documents to "clear their
names") and believed those promises by Defendants and Samler to be true.
Plaintiffs' reliance on such false statements were reasonable and justified.

120.  Defendants, on the other hand, made the within and foregoing material
misrepresentations, knowing them to be false and contrary to applicable
state and federal law , with the intent to defraud and deceive Plaintiffs.

121.  Plaintiffs reasonably relied upon the information provided by Defendants
and were damaged as a result of such misrepresentations and omissions. Had
Plaintiffs known the true facts regarding Defendants' intentions, Plaintiffs
would not have spoken with Samler or supplied him with information and
documents and would not have been forced to incur legal costs and attorney
fees and/or forced to defend against Defendants' defamatory attacks.

122.  In doing the acts alleged herein, Defendants acted with oppression, fraud,
and malice and Plaintiffs are entitled to damages, the full extent of which is

to be determined at trial.

## <u>COUNT FOUR - TORTIOUS INTERFERENCE</u>

123.  Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1

through 122 of their Complaint as if fully restated herein.

124.  Defendants acted improperly when they intervened in the contractual

relationship between Plaintiffs and their client at the time, Margo Ellis.

125.  Samler as well as Defendants Meredith Corporation, Banks , and John Does

acted improperly when they interjected themselves in the contractual

relationship between Plaintiffs and their client at the time Margo Ellis.

126.  Samler acted improperly by posing as a non-impartial mediator  and

by providing legal advice to Plaintiffs without a license to practice law.

127.  Defendants acted with malice and with the intent to injure Plaintiffs in

retaliation for Plaintiffs' refusal to capitulate to their extortion which

deprived the *Better Call Harry* show with another feather in its cap and

slowed down its quest to heroically reach $1,000,000.00 in *recovered* fees.

128.  Defendants aired, published and republished defamatory content that

contained false statements of fact intended to lure customers away from

engaging in Plaintiffs' businesses (as they had threatened they would do).

129.  As a direct result of Defendants' intervention, Plaintiffs and their former client Margo Ellis were unable to *re-enter* into a business relationship and reach a resolution for their fee dispute. Defendants' conduct ultimately resulted in financial harm to Plaintiffs.

130.  As a result of Defendants Samler 's, Meredith Corporation 's, Banks', and John Does' intervention and blatant disregard for the truth, Plaintiffs and their former client, Margo Ellis, were unable to reach a settlement .

131.  Furthermore, as a direct and  proximate result of Defendants ' actions, Plaintiffs have suffered damages in the form of lost wages and lost business and the loss of their ability to earn an income at a level before Defendants' egregious acts and malicious defamation *per se*.

## COUNT FIVE-TRADE LIBEL

132.  Plaintiffs reallege and incorporate by reference Plaintiffs ' paragraphs 1 through 131 of their Complaint as if fully restated herein.

133.  Defendants published the Defamatory Content as statements of fact.

134.  Defendants in no way shape or form indicated that the Defamatory Content were to be interpreted as statements of opinion rather than fact.

135.  The Defamatory Content contains false statements of fact.

136.  Defendants aired and published defamatory content on or about May 28, 2019 , and then launched subsequent attacks on Plaintiff through follow up videos and written stories .

137.  The Defamatory Content was published and republished onto Defendant CBS46 News' social media accounts including Facebook and YouTube (in order to spread Defendants' malicious defamation) where they continue to be shared and viewed as of the date of this filing. Defendants authorize and consent to the republication of these clips, without correction, to this day.

138.  Defendants published the Defamatory Content as statements of fact. Defendants in no way shape or form indicated that the defamatory statements were to be interpreted as statements of opinion rather than fact.

139.  As a result of Defendants actions, the Defamatory Content has been repeatedly and foreseeably republished by media outlets and other third parties throughout the country.

140 .  As a result of the Defendants' actions, Plaintiffs' personal and professional reputation were injured, and Plaintiff Fredrics was exposed to public hatred, contempt, and ridicule.

141.  The false statements in the Defamatory Content are of and concerning

Plaintiffs in that they allege Plaintiffs committed fraud and/or engaged in predatory and/or illegal business prectices.

142. Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

143. The false statements defamed Plaintiff Fredrics in his trade and profession.

144 As direct and proximate result of Defendants ' actions , Plaintiffs have suffered damages in the form of lost wages and lost business.

145. As a direct and proximate result of Defendants' actions, Plaintiffs' potential clients have refused to hire Plaintiffs for their services and have referenced the Defamatory Content that was published by Defendants as the reason for not hiring Plaintiffs.

146. The false statements caused actual damage to Plaintiffs, the full amount of which will be proven at trial.

147. Defendants' actions show willful misconduct, malice, fraud, wantonness , oppression and that entire want of care which raises  a presumption  of conscious  indifference  to  the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT SIX - COMMERCIAL DISPARAGEMENT

148.  Plaintiffs reallege and incorporate by reference Plaintiffs' paragraphs 1
      through 147 of their Complaint as if fully restated herein.

149.  Defendants published the Defamatory Content as statements of fact.

150.  Defendants in no way shape or form indicated that the Defamatory Content
      were to be interpreted as statements of opinion rather than fact.

151.  The Defamatory Content contains false statements of fact.

152.  Defendants aired the Defamatory Content on or about May 28, 2020 and
      then launched subsequent attacks on Plaintiff through follow up videos and
      written stories.

153.  The Defamatory Content was published and republished onto Defendants'
      social media accounts including Facebook and YouTube where they
      continue to be shared and viewed as of the date of this filing.

154.  Defendants authorize and consent to the republication of these video and/or
      audio clips (and/or printed media), without correction, to this day.

155.  Defendants  published the Defamatory Content as statements of fact.

156.  Defendants in no way shape or form indicated that the defamatory
      statements were to be interpreted as statements of opinion rather than fact.

157.  As a result of the Defendants' actions, Plaintiffs' professional reputations

were injured, and Plaintiffs were exposed to public hatred, contempt , and ridicule.

158. The false statements in the Defamatory Content are of and concerning Plaintiff Bruce Fredrics and his business, PACS, LLC in that they allege Plaintiffs committed fraud.

159. The false statements defamed the Plaintiffs in their trade and profession.

160. As direct and proximate result of  Defendants' actions, Plaintiffs have suffered damages in the form of lost income, wages, and lost business; in addition to Plaintiff Fredrics' personal and financial hardships.

161. As a direct and proximate result of Defendants 'actions, potential clients have refused to hire Plaintiffs  for their services and have referenced the Defamatory Content published by Defendants as the reason for doing so.

162. As enumerated herein, as a direct result of Defendants' intervention, Plaintiffs and their former client, Margo Ellis, were unable to enter into a business relationship and reach a resolution of their fee dispute.

163. Defendants' conduct ultimately resulted in financial harm to Plaintiffs .

164. Defendant's malicious and false statements and interference caused actual damage to Plaintiffs, the full amount of which will be proven at trial.

165.   Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of conscious indifference to       the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT SEVEN - VICARIOUS LIABILITY

166.   Plaintiffs reallege and incorporate by reference Plaintiffs 'paragraphs 1 through 165 of their Complaint as if fully restated herein.

167.   At all times relevant hereto, Samler and Defendants Banks and John Does were employees of Defendant Meredith Corporation's CBS46 News.

168.   At all times relevant hereto, Samler and Defendants Banks and John Does were engaged in the duties required by their employer, Defendant Meredith Corporation.

169.   At all times relevant hereto, Samler and Defendants Banks and John Does worked within the scope of their employment with Defendant Meredith Corporation.

170.   Therefore, Defendant Meredith Corporation is liable for the acts and omissions of their employees, Samler, Defendants Banks and John Does.

## COUNT EIGHT - FRAUD

*Page 33 of  38*

171. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 170 of their Complaint as if fully restated herein.

172. Plaintiffs show that Defendants falsely and fraudulently represented to Plaintiffs that they would not disparage, slander, or defame their character and professional business reputation.

173. The representations madeby Defendants were in fact false as Defendants did intend to (and planned to) slander, defame and disparage Plaintiffs on Defendants Meredith Corporation's and Banks' *Better Call Harry* show .

174. At the time these representations were made by Samler and Defendants, Plaintiffs were ignorant of the falsity of Samler's and Defendants' representations and believed them to be true to their word. Plaintiffs' reliance on such false statements were reasonable and justified.

175. Defendants, on the other hand, made the foregoing material misrepresentations, knowing them to be false and contrary to applicable state and federal law, with the intent to defraud and deceive Plaintiffs.

176. As a proximate result of Defendants' fraud and deceit and the facts alleged herein, Plaintiffs suffered a concrete, particularized and imminent injury in that Plaintiffs have been defamed, maliciously accused of crimes. and

deprived of substantial monies.

177.  Further, Plaintiffs have suffered damages to their reputation and Plaintiff

Fredrics was and continues to be exposed to public hatred, contempt, and

ridicule.

178.  In doing the acts herein alleged, Defendants acted with oppression, fraud,

and malice and Plaintiffs are entitled to damages.

## COUNT NINE - PUNITIVE DAMAGES

179.  Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1

through 178 of their Complaint as if fully restated herein.

180.  Plaintiff Bruce Fredrics is concededly a private figure and the false

statements were made with actual malice, as alleged herein.

181.  Defendants' actions show willful misconduct, malice, fraud, wantonness,

oppression and that entire want of care which raises a presumption of

conscious indifference to the consequences, and accordingly Plaintiffs are

entitled to an award of punitive damages against Defendants.

182.  As direct and proximate result of Defendants' actions, Plaintiffs have

suffered damages in the form of lost wages, lost income, and lost business.

## COUNT TEN - CONSPIRACY

183. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 182 of their Complaint as if fully restated herein.

184. At all times relevant hereto, Defendants, individually and in concert (aided and abetted by Samler and Bauer), conspired to defame and harm and did defame and harm Plaintiffs.

185. As direct and proximate result of Defendants' conspiracies and/or egregious actions and fraud, Plaintiffs have suffered damages in the form of lost wages, lost income, and lost business.

186. As willing and active participants in the conspiracies, Defendants are jointly and severally liable for any and all damages suffered by Plaintiffs due to their herein-enumerated egregious actions and fraud.

## COUNT ELEVEN - SPECIAL DAMAGES

187. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 186 of their Complaint as if fully restated herein.

188. Because of Defendants' actions and fraud,[5] Plaintiffs have been forced to

---

[5] Especially Defendants' refusal to honor Plaintiffs' timely retraction and cease and desist requests (sent about the time as their spoliation letter to Defendant Meredith Corporation), and Defendants' threats by and through Bauer, their counsel, which were designed to chill Plaintiffs' First Amendment rights to seek redress from the courts, and which stifled Plaintiffs' hiring attempts for additional

hire counsel at a cost of Eighty-Five Thousand & 00/100ths ($85,000.00)

Dollars and have been forced to pay for the litigation costs of this action.

189.   As direct and proximate result of Defendants' actions, Plaintiffs have

suffered damages to date in the form of $85,000.00 in special damages.

190.   Defendants are jointly and severally liable for any and all special damages

suffered by Plaintiffs but no less than $85,000.00, their costs to date.

## JURY   DEMAND

Plaintiffs hereby demand a trial by a fair and impartial jury.

**WHEREFORE**, Plaintiffs respectfully demand the following:

a.      That Plaintiffs recover compensatory damages and lost wages as determined by a fair and impartial jury;

b.      That Plaintiffs recover general, special, and punitive damages as determined by a fair and impartial jury but no less than $85,000.00 in special damages;

c.      That Plaintiffs recover all expenses and costs, including attorneys fees, as determined by a fair and impartial jury; and

d.      That this Court issue an injunction prohibiting the Defendants from disseminating, distributing, or publishing any footage or statements that are judicially determined to be defamatory; and

---

counsel to bring this action and to assist in its prosecution (one attorney, fearing Defendants' threats, recently withdrew from his representation of Plaintiffs).

e.    That Plaintiffs have such other and further relief as this Court deems fair, just, and equitable.

## RULE 7 .1(D) CERTIFICATE

The undersigned counsel certifies that this document has been prepared with one of the fonts and point selections approved by the Court in *Local Rule 5.l-C*, to wit: *Times New Roman, 14 point*.

This 24th day of September, 2020.


/s/ *Ralph J. Villani*

**Ralph J. Villani, Esq.**
GA Bar No.: 727700

***VILLANI LAW FIRM***
821 Dawsonville Hwy.
Suite 250-333
Gainesville, GA 30501-2634

(TEL) 770.985.6773
(FAX) 770.979.5190

(Email) *ralphjvillani@gmail.com*

**Counsel for Plaintiff**